14522

STATE v. GRIGGS

(192 S. E., 360)

December, 1936.

*Messrs. J. K. Owens* and *J. J. Evans,* for appellant, cite:

*Messrs. Sidney S. Tison, Solicitor,* and *L. M. Lawson,* for respondent, cite:

August 2, 1937.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

The indictment in this case, on which the Grand Jury found a "True Bill," and on which appellant was tried, in the first count, charged that one Henry Jacobs did commit murder, in that on November 13, 1936, with a pistol he did shoot, strike, penetrate, and mortally wound one Oscar L. Garland, from which mortal wound the said Oscar L. Garland then and there died; the second count charges that the appellant, on November 13, 1936, was an accessory thereto before the fact, in that appellant incited, moved, procured, aided, counseled, hired, and commanded the said Henry Jacobs to do and commit the felony and murder in manner and form aforesaid; the third count charges that appellant well knowing Henry Jacobs to have done and committed the said felony and murder in form aforesaid, him the said Jacobs did feloniously receive, harbor, maintain, and aid to escape; the fourth count charges that appellant did commit murder in that on November 13, 1936, with a pistol he did shoot, strike, penetrate, and mortally wound the said Oscar L. Garland from which mortal wound the said Oscar L. Garland then and there died; the fifth count charges that

Henry Jacobs well knowing appellant to have done and committed the felony and murder in form aforesaid, him the said appellant did feloniously receive, harbor, maintain, and aid to escape; the sixth count charges that Henry Jacobs and appellant on November 13, 1936, in and upon one Oscar L. Garland, feloniously, willfully and of his malice aforethought did make an assault; and that the said Henry Jacobs and appellant (Ronald Griggs) him the said Oscar L. Garland then and there feloniously, willfully, and of his malice aforethought, with a pistol, did shoot, strike, penetrate, and wound, giving to the said Oscar L. Garland one mortal wound of which he then and there died; and the seventh count charges appellant with carrying a concealed weapon, to wit, a pistol.

Upon the call of the case for trial, appellant moved for a continuance, which motion was refused. Thereupon counsel representing Henry Jacobs moved for a severance, and, the solicitor consenting thereto, the motion was granted, the trial Judge stating: "I'll make a severance and not try him. We will try Ronald Griggs, and as to Henry Jacobs we will take that up later."

Before arraignment and before pleading, appellant demurred to the indictment and moved to quash the same on the ground that there was a misjoinder of the parties defendant, in that the defendant, Jacobs, is charged in the first count with murder; in the second count appellant is charged with accessory before the fact; in the third count appellant is charged as an accessory after the fact; in the fourth count appellant is charged with murder; in the fifth count Jacobs is charged as an accessory before the fact; and in the sixth count Jacobs is charged as an accessory after the fact; and in each and every instance the allegations for the killing of one individual with one and the same pistol. It was the position of appellant that two or more persons cannot be joined in the same indictment, unless engaged jointly in the commission of the same offense, and that the first count and the fourth count in the indictment charge an offense,

and the same offense, as having been committed by each of the defendants separately and not while engaged in a common or joint enterprise, and each of the defendants in the separate counts is charged independently of having committed the offense; that the indictment alleges an offense having been committed by one or the other of the defendants; and that the indictment should charge joint and common action on the part of both defendants, or it should charge one of the defendants as a principal, and under the allegations of the indictment, the State undertakes and does charge one or the other of the defendants as principal.

The motion to quash and dismiss the indictment was refused, and appellant then asked that the jurors be placed upon their *voir dire.* The Court propounded to the several jurors the usual questions, as to relationship by blood or connection by marriage, to the defendant or the deceased; as to having made up his mind or expressed an opinion as to the guilt or innocence of the accused, and then this question: "Are you opposed to capital punishment?" The trial Judge excused those jurors who stated that they were opposed to capital punishment.

The appellant was separately tried on the indictment hereinbefore described, was by the jury convicted of murder, and, after a motion for a new trial was refused, the trial Judge imposed sentence in the usual form, fixing the date for electrocution for February 21, 1937.

The appeal is from such trial, and refusal of a new trial, and errors are alleged, generally, on the following grounds: (1) Refusal to grant a continuance; (2) refusal to quash the indictment; (3) alleged election by the trial Judge and not the solicitor to try appellant before Jacobs; (4) asking the prospective jurors on their *voir dire* examination if they were opposed to capital punishment; (5) allowing the coroner to give his opinion as to the cause of the death of the deceased, and remarks of the trial Judge concerning the objection to the testimony of the coroner; (6) admitting testimony that the dead man was married and left surviving

him children; (7) refusing motion for directed verdict on the first count as to appellant, wherein he was charged with the murder of the deceased, Garland; (8) in the charge to the jury; (9) and (12) failure to tell the jury that one of the verdicts which they could bring in was "Not Guilty," when outlining to them the various verdicts they could render; (10) failing to grant a new trial; and (11) failure of proof of venue.

In the view we take of the case, it will be unnecessary to enter into a discussion of appellant's first exception.

The second ground of appeal attacks the indictment, which is claimed to contain seven counts. As a charge against a principal and an accessory together constitutes but one count (*State v. Atkinson,* 40 S. C., 363, 18 S. E., 1021, 42 Am. St. Rep., 877), as a matter of law, the number of counts is four; but an indictment, of course, is not good or bad, according to the number of counts, where none, as here, are in the disjunctive. The present indictment charges Griggs with murder, and Jacobs with accessory to such murder before the fact; it also charges Jacobs with the same murder and Griggs as accessory thereto, both before and after the fact, while in another count it charges both with murder and in another count charges Griggs with carrying concealed weapons, the last being mandatory under Section 1008 of the Code of 1932, which requires two counts in all murder indictments where a concealed weapon is used.

Quoting from *State v. Burbage,* 51 S. C., 284, 28 S. E., 937:

"In the first count, one William Peter T. Rowley was charged with the murder of one Joel Augustus Tanner, and the appellant, Burbage, was charged as accessory before the fact to such murder. In the second count, Rowley and Burbage were jointly charged with murder of Tanner; and in the third count the appellant was charged as accessory after the fact to the murder of Tanner, alleged to have been committed by Rowley. * * * Rowley alone was put upon his trial (the case, as to Burbage, having been con-

tinued by the solicitor), when Rowley was convicted of manslaughter, and duly sentenced therefor. At the July term, 1897, when Burbage was put on his arraignment, he moved to quash the indictment upon the several grounds. * * * This motion was refused. * * *

"The first ground upon which the motion to quash the indictment is rested is that the second and third counts of the indictment are repugnant to each other."

There Judge McIver, citing and reviewing the cases on this subject in the State up to that time, clearly showed that inconsistent counts may be included in the same indictment if they grow out of the same transaction, pointed to the repugnancy between two counts in one indictment, one charging burglary in entering a dwelling with intent to steal, another charging larceny; to the inconsistency between two counts, one charging larceny, the other receiving stolen goods, and one a felony and the other a misdemeanor; to the apparent inconsistency in a count for murder and a count for manslaughter, malice being necessary in one, and impossible in the other; and in all of these instances Judge McIver held the indictment was good and proper pleading. To the instance cited may be added the accepted rule whereby in an indictment for murder one may be convicted of involuntary manslaughter. The indictment here contained one more count than in the *Burbage case,* but there is no greater inconsistency, and, since the counts all grow out of the same transaction, the indictment is clearly good. In fact, it has the virtue of in one trial (had there been no severance) settling all issues growing out of the one transaction, a practice to be commended, not condemned.

The third exception alleges error, in that, when the motion was made by the attorneys for Jacobs for a severance, the presiding Judge upon granting the motion, and in the same breath, announced that the Court would try appellant and would take up the *Henry Jacobs case* later. It is customary, of course, for the solicitor to elect as to which case or cases he will try; but the record discloses the reason

for this announcement by the trial Judge, and that the solicitor was in full accord. We will not discuss this further, in that the case must go back for a new trial for other reasons.

The fourth exception alleges error for that, in addition to the usual question addressed to the prospective jurors when they were put upon their *voir dire*, the trial Judge asked them, "Are you opposed to capital punishment—that is, electrocution?" This exception is not argued by counsel in their brief, and we do not recall any reference thereto in the oral argument. We will state, however, that this is a question that has been customarily asked in cases where a conviction carried the penalty of death, and recognized by this Court as a proper inquiry. See *State v. James*, 34 S. C., 49, 12 S. E., 657, and *State v. Hyde*, 90 S. C., 296, 73 S. E., 180. And, further than this, the record does not disclose that any objection was made to the propounding of this question by the trial Judge at the time of the selection of the jury.

Exception 5 violates Section 6 of Rule 4 of this Court, but the gravity of this case will not permit a refusal to consider the exception for that reason.

The record shows that, prior to the deceased being shot, he had been knocked down twice by being hit in or upon the head with a Coca-Cola bottle, and, so far as the testimony discloses, the deceased was lying on the floor where he had fallen from the second "knock-down," when shot. It is true that the solicitor, after having elicited from the State's witness, Henry Jacobs, that he (Jacobs) had knocked down the deceased the second time, asked the witness the following questions and received the following answers:

"Q. Did you get the pistol and shoot Garland? A. Yes, sir.

"Q. He fell down and died right there? A. Yes, sir."

But the statement by the solicitor that "He fell down and died right there?" in the form of a question, in view of the

testimony of the witness, Jacobs, just preceding, is no evidence that the deceased was not yet lying on the floor when shot. See *Delk v. Liggett & Myers Tobacco Co.*, 180 S. C., 436, 446, 186 S. E., 383.

The physician who performed the autopsy died the day before the trial, and the coroner, who was present at the autopsy, testified in behalf of the State as to the pistol wound—where the bullet entered the body and the point of its extraction. He had testified that his occupation was that of an undertaker, and that he had taken the course involving anatomy required by the States of South Carolina and North Carolina—a full course required by the Embalming Society. Over the objection of appellant's counsel the coroner was permitted to testify that in his opinion the deceased died from a pistol shot wound through the heart.

Of course, had the deceased received no other wound on the night of his death than the pistol shot wound, the objection to the coroner giving his opinion that the deceased did not die from natural causes, but from the pistol shot, might be considered too highly technical or hypercritical to receive any serious consideration, but it must be recognized that a blow on the head, inflicted with a Coca-Cola bottle, sufficient to fell a person, may produce death, and, under the testimony in this case, it was highly important to appellant as to what caused the death of the deceased. If the blows on the head could just as easily have produced death—and it is not claimed that appellant either struck or caused any one else (Jacobs) to strike these blows—then the importance of this fact cannot be exaggerated.

In *State v. Clark*, 15 S. C., 403, 408, the Court quoted with approval from Greenleaf, Vol. 1, § 440, as follows: "'That in questions of science, skill or trade, or others of like kind, persons of skill, sometimes called experts, may not only testify to facts, but are permitted to give their opinions in evidence. Thus, the opinions of medical men are constantly admitted as to cause of death or disease or the consequences of wounds, and as to the sane or insane state of

a person's mind, as collected from a number of circumstances, and as to other objects of professional skill; and such opinions are admissible in evidence, though the witness founds them, not on his own personal observation, but on the case itself as proved by other witnesses.' " See, also, the case of *State v. Hyde, supra.*

We do not find where any witness, not a physician, there being some doubt which one of two injuries caused a death, has been permitted to give an opinion as to the cause of death. This is as it should be. The juror of average intelligence would be just as competent to reach a conclusion as even an undertaker, who in the pursuit of his occupation, supposedly handles and works upon dead bodies only. We are not inclined to broaden the field of "expert testimony" or opinion evidence.

We cannot hold that the coroner sufficiently qualified as an expert to give his opinion as to the cause of the death of the deceased, and, as it is impossible for any one other than the members of the petit jury who convicted the appellant to say if this "expert testimony" given in evidence by the coroner in anywise influenced the verdict, we must sustain this exception.

During the direct examination of the wife of the deceased, she testified as to the family surviving the deceased. Counsel for appellant immediately moved to strike out this testimony on the ground that it was irrelevant, was not offered for the purpose of proving the offense charged against appellant, but for the purpose of arousing sympathy. The trial Judge refused to strike out this testimony, and in ruling thereon stated: "I think it is permissible to show a man's family, and I'll instruct the jury it makes no difference whether the man who is killed, whether he is a single man or a married man of a family." Under the statement of the trial Judge and when he failed in his charge to so instruct the jury, it was, of course, the duty of counsel for appellant to call the matter to his attention, and this opportunity was given appellant's counsel at the conclusion

of the Judge's charge. While the trial Judge recognized that such testimony was irrelevant, though refusing to strike it from the testimony, yet his statement in the presence of the jury that it made no difference whether the man who is killed is single or a married man of a family probably was more effective, and favorable to the appellant than if he had ordered the testimony stricken. If error, it was harmless.

Appellant takes the position that, there being no testimony tending to show that he fired the shot that killed the deceased, Garland, the trial Judge should have directed a verdict of not guilty on the first count of the indictment wherein he was charged with murder, and that the testimony of Jacobs to the effect that he (Jacobs) shot the deceased through the command and fear of appellant tended to show only that appellant was an accessory before the fact.

The law of this State is directly opposed to this position. In *State v. Davis,* 88 S. C., 204, 211, 70 S. E., 417, it was held: "All persons present aiding and abetting a murder are regarded as principals and equally guilty"—citing *State v. Fley,* 2 Brev., 338, 4 Am. Dec., 583; *State v. Putnam,* 18 S. C., 175, 178, 44 Am. Rep., 569; *State v. Hunter,* 79 S. C., 73, 75, 60 S. E., 240. A similar statement of the law appears as *obiter* in *State v. Kennedy,* 85 S. C., 146, 67 S. E., 152.

Appellant's brief quotes Section 1937 of the Code of 1932, and states that the *Davis* and *Kennedy cases* were prior to 1912. The identical statute appears in the General Statutes of South Carolina of 1871, as Section 2 of Chapter 137.

The case of *State v. Sheriff,* 118 S. C., 327, 110 S. E., 807, cited by appellant, was decided upon the facts of that case, as shown by the opening paragraph of the opinion.

There is nothing in the record from which the jury could have concluded that appellant actually fired the shot that killed Garland, but, since the case must go back for a new

trial, it would serve no useful purpose to further discuss exceptions seven and eight. We will state, however, in that the indictment contained another count charging appellant and Jacobs jointly with the murder, the count complained of could have well been treated as surplusage under the testimony.

We will now take up appellant's Exception 9 and ██ Exception 12. In the general charge of the trial Judge, after defining the phrase "reasonable doubt," he stated to the jury, "If you have such doubt as to the guilt of this defendant on either of the three charges or all of them, give him the benefit of that doubt and find him not guilty." After completing his charge to the jury, the trial Judge inquired of counsel for the State and the appellant if they desired anything further on behalf of either, and, upon receiving answers in the negative, proceeded to instruct the jury as to the several verdicts it could render, and how to write such verdict as may be agreed upon, but did not mention or provide for a verdict of "Not Guilty."

After the jury convicted appellant of murder, and before they were discharged, the fact that the trial Judge had failed to include a verdict of "Not Guilty" in his instructions was called to his attention. He thereupon explained to the jury that inadvertently he had omitted to do so, and sent them back to the jury room to reconsider the case. The same verdict as at first rendered was brought in and published.

This Court has time after time decided that the charge as a whole must be considered, and, the trial Judge in his charge having instructed the jury, if they had a reasonable doubt as to the guilt of the appellant, to find him not guilty, we cannot say that the omission to tell them that "Not Guilty" was one of the verdicts they could render, is reversible error, even when these instructions are being given at the conclusion of the charge. As a matter of practice, however, and especially where the crime charged is of such a serious nature, a jury should be instructed that one form

of verdict which it can find is "Not Guilty." We well appreciate the position in which it places counsel for a defendant when this form of verdict is omitted from the instructions.

The trial Judge did everything in his power to cure and remedy the inadvertence on his part.

There is no merit in exception eleven. Venue was proven as conclusively as if there had been direct and affirmative proof thereof.

All exceptions are overruled, except No. 5, which is sustained.

Therefore, the judgment is reversed, and the case remanded for a new trial.

Mr. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and FISHBURNE concur.

Mr. JUSTICE CARTER did not participate on account of illness.