495 S.E.2d 463

**STATE of South Carolina, Respondent,**

v.

**Levern HENRY, Appellant.**

No. 2771.

Court of Appeals of South Carolina.

Submitted Dec. 2, 1997.

Decided Dec. 15, 1997.

Rehearing Denied Mar. 19, 1998.

Assistant Appellate Defender Robert M. Dudek, of South Carolina Office of Appellate Defense, Columbia, for Appellant.

Attorney General Charles M. Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Senior Assistant Attorney General Norman Mark Rapoport; and Solicitor W. Barney Giese, Columbia, for Respondent.

ANDERSON, Judge:

Levern Henry (Henry) was convicted of second degree criminal sexual conduct with a minor, committing a lewd act

upon a child, and assault and battery with intent to commit second degree criminal sexual conduct with a minor. He appeals, arguing the trial court erred in qualifying Coles Badger, a psychotherapist, as an expert witness to testify regarding her diagnosis of post-traumatic stress disorder (PTSD). We affirm.[1]

## FACTS/PROCEDURAL BACKGROUND

Carol Blount (Blount) met Henry in 1984. At the time, she had three daughters: Nayenday, Jenne (Victim), and Tinita. In April of 1985, she married Henry and moved with her daughters from Philadelphia, Pennsylvania, to Columbia, South Carolina, to live with Henry. Initially, Victim and Henry got along fine. However, between October 15, 1986, and Christmas of that same year, when Victim was eleven years old, the relationship changed. During that time, Henry began to molest Victim by touching her on her breast, thighs, and vagina.[2] Sometimes Henry would reach over and fondle Victim while she was sitting alone with him. Other times Henry would undress himself, rub his penis against her vagina and body, and lay on top of her. Henry tried to force Victim to kiss his penis and watch pornographic movies. According to Victim, this abuse would occur either in the den or Henry's bedroom when the two were alone in the house.

During the summer of 1989, when Victim was thirteen years old, while Victim was lying on the couch in the den, Henry removed her shorts, pulled a "finger-like" object out of a bag, and inserted it into her vagina.[3] In December of 1990, Henry pulled Victim off of the couch in the den. He picked her up and threw her on the bed in his bedroom. Victim screamed and clenched her legs together to keep him from inserting his fingers into her, but Henry pulled her legs apart and then bit

---

1. Because oral argument would not aid the Court in resolving the issues, we decide this case without oral argument.

2. The charge of lewd act on a minor stemmed from the first instance of abuse, which occurred sometime between October 15, 1986, and Christmas of that year.

3. Henry was charged with second degree criminal sexual conduct with a minor for the incident where he inserted a "finger-like" object in Victim's vagina.

her on her thigh.[4] Victim managed to run out of the bedroom when the telephone rang. When Victim examined her leg, she observed Henry's teeth marks there. Victim was fifteen years old at the time.

Victim felt "uncomfortable" about Henry's behavior, but did not tell anyone because she was afraid. On one occasion, when Victim threatened to tell on Henry, he warned her he would go to jail but he would make sure something worse happened to her. Victim, who was nineteen years old at the time of trial, testified Henry abused her for three to four years "whenever he felt like it."

On February 7, 1991, Victim had a conversation with her younger sister, Tinita. As a result of this conversation, in the early morning hours of February 8, 1991, Victim told her mother Henry had molested her. Carol Blount phoned and questioned Nayenday, Victim's older sister who was living in Florida. Nayenday informed her mother Henry had molested her. Victim, Tinita, and Blount then left Henry's house.

Nayenday, who was twenty three years old at the time of trial, testified. Henry molested Nayenday when she was in the tenth and eleventh grades. In 1986, when Nayenday was in the tenth grade, Henry touched her vaginal area. Nayenday did not say anything because she was "stunned." After that first episode, Henry sometimes engaged in sexual intercourse with Nayenday.

In March of 1987, Henry told Nayenday he would take her to get her learner's permit but she was "going to have to do something in return." Later that same day, after Henry had taken Nayenday to get her permit, "he pushed the issue of having to do something for getting [her] learner's permit." Nayenday then had sexual intercourse with Henry. In June of 1987, in order to get her driver's license, Nayenday again had to have sexual intercourse with Henry. During much of the abuse, Nayenday would often stare at the clock in Henry's bedroom to ignore what was happening to her. Other events led to further abuse, such as before a band trip or class visit to Six Flags when she needed money from Henry. He would

---

4. Henry's third charge, assault and battery with intent to commit second degree criminal sexual conduct with a minor, resulted from this incident.

force her "to do something with him" before he would give her the money she needed.

The abuse always occurred in Henry's bedroom. Nayenday did not tell anyone about the abuse because she did not want to split up her family and she felt no one would believe her. Henry stopped abusing Nayenday during her junior year in high school because she told him she was going to kill him if he did it again. Before Nayenday left for college, she told Henry she would not say anything about the abuse if he promised not to bother her sisters.

In the twelve months after Henry stopped abusing her, Nayenday blocked out much but not all of the specific acts of abuse. However, she did not forget the fact she had been sexually abused by Henry. In 1989, Nayenday attended the University of Florida. During the spring semester of Nayenday's freshman year at college, she began experiencing flashbacks and nightmares regarding the details of the abuse. In March of 1990, she sought counseling, but kept it secret from her family. At the end of her freshman year, Nayenday's grade point average was 1.88. As a result of the emotional trauma she was suffering during this time, Nayenday received a medical withdrawal in the spring of 1990. Although she returned to college in the fall of 1990, she obtained another medical withdrawal in the spring of 1991. Nayenday did not reveal the abuse to her mother until she called and specifically asked Nayenday if Henry had molested her.

At trial, the State offered Coles Badger as an expert psychotherapist with a specialty in child sexual abuse. During *voir dire*, Henry objected to Badger's qualification to render a psychiatric or psychological diagnosis. Despite the objection, the court qualified Badger as an expert psychotherapist with a specialty in child sexual abuse.

In March of 1991, Badger met with Victim on three separate occasions for a total of approximately three hours. The purpose of the meetings was to treat Victim for sexual abuse. Victim told Badger she had been repeatedly sexually abused by Henry. Badger opined Victim suffered from PTSD. According to Badger, PTSD is a "process that some people go through after they've experienced a traumatic event, such as sexual abuse." PTSD has two sets of symptoms: (1) anxiety-

based symptoms, such as nightmares, fears, jumpiness, and crying, and (2) depressive symptoms, such as withdrawal, depression, and not wanting to tell anyone about what happened to them. Badger stated victims "usually kind of bounce around among all those symptoms." Badger observed Victim possessed symptoms of PTSD: anxiety, anger, low self esteem, withdrawal, fear of the abuse recurring, feelings of shame, and avoidance behaviors. Badger testified she knows PTSD "inside and out."

Badger explained the phenomenon of delayed disclosure of sexual abuse—the phenomenon of a child being sexually abused and not telling anyone for a period of time. She further revealed delayed disclosure is a very common trait among child sexual abuse victims. Defense counsel objected to Badger's reference to statistics and research regarding delayed disclosure stating he did not have access to the research. This objection was overruled.

Badger discussed several coping mechanisms of child sexual abuse victims. Some cope by blocking out details of the abuse or the actual abuse itself. According to Badger, it is common for these blocked memories to come back in the form of nightmares, dreams, or flashes. Some cope by striving to be perfect and excelling in school or activities so "that the abuse will somehow go away or not be as bad." Those victims focus intently on their schoolwork to distract themselves from the abuse. Badger testified it was consistent with sexual abuse to perform poorly in school.

At a pretrial hearing in 1992, then Circuit Court Judge William B. Traxler denied the State's motion to admit testimony from Nayenday and Tinita. The State appealed. In *State v. Henry*, 313 S.C. 106, 432 S.E.2d 489 (Ct.App.1993), this Court held Nayenday's testimony was admissible, but Tinita's testimony was properly excluded. The Court remanded the case. At trial, the jury convicted Henry on all charges.

## ISSUE

Did the trial court err in qualifying a psychotherapist with a specialty in child sexual abuse as an expert witness to give opinion testimony in regard to the diagnosis of PTSD?

## STANDARD OF REVIEW

The qualification of a witness as an expert is a matter within the discretion of the trial court. *State v. Schumpert*, 312 S.C. 502, 435 S.E.2d 859 (1993); *State v. Whaley*, 305 S.C. 138, 406 S.E.2d 369 (1991); *State v. Myers*, 301 S.C. 251, 391 S.E.2d 551 (1990). *See also State v. Von Dohlen*, 322 S.C. 234, 471 S.E.2d 689 (1996) (admission of expert testimony is within discretion of trial court). The trial judge's determination regarding a witness' qualifications to testify as an expert will not be disturbed on appeal absent a showing of an abuse of discretion. *State v. Goode*, 305 S.C. 176, 406 S.E.2d 391 (Ct.App.1991); *Honea v. Prior*, 295 S.C. 526, 369 S.E.2d 846 (Ct.App.1988). There is no abuse of discretion as long as the witness has acquired by study or practical experience such knowledge of the subject matter of his testimony as would enable him to give guidance and assistance to the jury in resolving a factual issue which is beyond the scope of the jury's good judgment and common knowledge. *Goode, supra.*

## LAW/ANALYSIS

Henry contends the trial court erred in qualifying Coles Badger as an expert witness and allowing her to testify Victim suffered from PTSD. He argues Badger does not possess the necessary medical, psychological, or psychiatric education to render this diagnosis. Further, Henry maintains the trial court erred by allowing Badger to "bolster" her diagnosis of Victim by referring to records from Florida regarding Nayenday.

### Diagnosis of Post–Traumatic Stress Disorder

The South Carolina Rules of Evidence were adopted effective September 3, 1995. This trial occurred prior to that date. Concomitantly, Rule 24(a), SCRCrimP, was efficacious. Rule 24(a) is *identical* to Rule 702, SCRE. Thus, pre-rule or post-rule results in the same application because of the exactitude in the verbiage used in Rule 702, SCRE, and Rule 24(a), SCRCrimP.

Rule 702, SCRE, provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to under-

stand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

In a criminal prosecution, as to questions of science, skill, or trade, or others of like kind, persons of skill, sometimes called experts, may not only testify to facts, but are permitted to give their opinions in evidence. *State v. Griggs,* 184 S.C. 304, 192 S.E. 360 (1937). The party offering the expert has the burden of showing the witness possesses the necessary learning, skill, or practical experience to enable the witness to give opinion testimony. *State v. Schumpert,* 312 S.C. 502, 435 S.E.2d 859 (1993). *See also State v. Harris,* 318 S.C. 178, 456 S.E.2d 433 (Ct.App.1995) (party presenting expert must show witness possesses, either through study or experience, specialized knowledge that makes him better qualified than jury to form opinion on particular subject). There is no exact requirement concerning how knowledge or skill must be acquired. *State v. Goode,* 305 S.C. 176, 406 S.E.2d 391 (Ct.App.1991). *See also Sims v. State,* 260 Ga. 782, 399 S.E.2d 924 (1991) (it is not necessary that knowledge of expert witness be derived solely from academic endeavors, as it may be derived from experience). Generally, however, defects in the amount and quality of the expert's education or experience go to the weight to be accorded the expert's testimony and not to its admissibility. *Schumpert, supra. See also State v. Nathari,* 303 S.C. 188, 399 S.E.2d 597 (Ct.App.1990) (adequacy of expert's knowledge, once qualified, goes to weight of testimony, not its admissibility).

The precise issue of the qualification of a psychotherapist to give an opinion in regard to a diagnosis of PTSD is novel in the criminal law of South Carolina. However, in *State v. Morgan,* 326 S.C. 503, 485 S.E.2d 112 (Ct.App.1997), the trial court qualified Sharon Crenshaw as the State's " 'expert mental health counselor in the field of evaluation and treatment of sexually abused children and posttraumatic stress.' " *Id.* at 507, 485 S.E.2d at 114. Crenshaw's testimony was offered to prove the child exhibited behavioral symptoms *consistent with PTSD,* rape trauma syndrome, and sexual abuse. Crenshaw described some of the symptoms of PTSD, described the child's behavior problems, and diagnosed the child as having

" 'numerous symptoms' " of PTSD. *Id.* at 507, 485 S.E.2d at 115. Crenshaw opined the child " 'exhibited characteristics *consistent with being sexually abused.*' " *Id.* at 507, 485 S.E.2d at 115 (emphasis added).

The trial court overruled Morgan's various challenges to Crenshaw's expert opinion testimony. The court held any defects went to the weight but not admissibility of her testimony, and any weaknesses could be brought out on cross-examination. Although the court did not limit the purpose, it did limit the form of Crenshaw's testimony. Crenshaw did not "g[i]ve an outright conclusion of sexual abuse or PTSD, *but used only 'consistent with' language.*" *Id.* at 508, 485 S.E.2d at 115 (emphasis added).

On appeal, Morgan raised only *one challenge to the admissibility of the expert child abuse testimony.* He argued " '*there was no scientific basis that the facts or data was of a type reasonably relied upon by experts in the particular field forming opinions or inferences upon the subject.*' " *Id.* at 508, 485 S.E.2d at 115 (emphasis added). The focus of *Morgan* relates to the admissibility of expert child abuse testimony. *Morgan* does not involve an analysis of a challenge to the qualifications of the expert to give a *direct* diagnosis of PTSD.

The issue posited in this appeal differs substantially from *Morgan.* Here, the trial judge allowed the psychotherapist to give a *direct* opinion as to PTSD. The qualification of a social worker to give a *direct* opinion as to diagnosis of PTSD has been addressed with certitude in the civil law setting. In *Honea v. Prior,* 295 S.C. 526, 369 S.E.2d 846 (Ct.App.1988), Patti Honea, a patient of Dr. William Franklin Prior, was awarded damages as a result of a sexual assault committed by Dr. Prior. In her complaint, Honea alleged Dr. Prior caused her, among other things, to suffer emotional and psychological pain and trauma.

On appeal, Prior contended the trial court erred in qualifying two social workers as expert witnesses to give opinion testimony concerning their diagnoses of Honea's psychiatric disorder. Deb Bennett received a Bachelor's degree in psychology and a master's degree in clinical social work. She had been trained in a sexuality program in Minneapolis and was responsible for supervising the rape crisis centers in that city.

Shortly after she arrived in Aiken, South Carolina, she participated in a three-day program for professionals concerned with victims of sexual assault. At the time of trial, she had been employed by the Mental Health Center for four years and held the position of Adult Family Out–Patient Program Coordinator. She once served as coordinator of the family violence program at the Mental Health Center and trained therapists on its staff. She carried her own clinical load and supervised sixty other therapists.

Patricia Feigley received her undergraduate degree in sociology and her master's degree in social work with a mental health specialization. Feigley worked at the Family Service Center in Columbia as a clinical social worker for approximately five years. She engaged in private practice, did consulting work, and worked part-time at the Columbia Mental Health Center. All total, Feigley had eleven years experience in treating and counseling patients, including sexual assault victims. Feigley considered herself " 'qualified and competent to make psychiatric diagnoses' " because of her clinical training in a psychiatric setting. Further, she had read widely regarding PTSD and had been involved in clinical environments where this diagnosis was commonly made.

The trial judge qualified both social workers as expert witnesses and allowed them to testify concerning a diagnosis of PTSD. The Court held:

> Considering each social worker's education, her postgraduate training, her clinical experience with victims of sexual assault, and her opportunities to observe Honea, we hold the trial judge committed no abuse of discretion in determining that each social worker was qualified as an expert to give opinion evidence regarding Honea's mental condition. *See State v. Lawrence,* 112 Idaho 149, 730 P.2d 1069 (Ct.App.1986).

*Honea,* 295 S.C. at 531, 369 S.E.2d at 849. The extension of the rationale articulated in *Honea* to the criminal trial venue is a logical and commonsensical approach to the qualification of an expert to render an opinion on PTSD.

Badger obtained a bachelor of arts degree in sociology and a masters degree in social work from the University of South Carolina. For seven years, she practiced as a psychotherapist

in Columbia. However, she had "specialize [sic] with working sexual abuse, both children and adults," for eleven years. According to Badger, she had been qualified more than fifteen times in general sessions court as an expert psychotherapist with a specialty in child sexual abuse. Moreover, Badger had been qualified in both federal district court and family court. On each occasion, Badger was asked to render her opinion as to a diagnosis.

Badger is a member of the Board of Directors of the American Professional Society of the Abuse of Children. She conducts workshops on PTSD, delayed disclosure and memory blocking. Badger worked with Post–Trauma Resources (PTR) for five years before she went into private practice. PTR is an agency which specializes in PTSD. She stated PTSD is her specialty.

When meeting with child victims of sexual abuse, Badger provides individual therapy and treatment. She prepares assessments to determine whether the child has been sexually abused. Badger conducts workshops on how to interview child sexual abuse victims, how to determine whether they were abused, and how to treat sexual abuse.

In March of 1991, Badger met with Victim three times for a total of approximately three hours. At each meeting, Badger spent five to ten minutes alone with Victim's mother in order to obtain some background information. The purpose of the meetings was to treat Victim for sexual abuse. Victim described the sexual abuse.

Badger opined Victim suffered from PTSD. Badger based her diagnosis and opinion as to PTSD on the history received from Victim, Badger's personal observations of Victim, Victim's demeanor, and symptoms exhibited by Victim. Badger did not talk to anyone other than Victim and her mother when forming her opinion. Psychotherapists "believe that they would be biased by other information and therefore they do not collect collateral information before they do their interview and make their diagnosis."

Henry does not challenge the substance of Badger's testimony. Rather, he argues the State failed to present evidence she was qualified to give the diagnosis of PTSD. Henry cites her lack of a medical degree. The challenge mounted by

Henry blithely ignores the recognized principle of law that a witness is competent as an expert provided the witness has acquired by reason of study or experience or both such knowledge and skill in a business, profession, or science that she is better qualified than the jury to form an opinion on the particular subject of testimony. *See Botehlo v. Bycura,* 282 S.C. 578, 320 S.E.2d 59 (Ct.App.1984). Luculently, in the case *sub judice,* Coles Badger possessed the requisite skill, training, experience, learning, and knowledge to render an opinion in regard to PTSD.

### Testimony Regarding Nayenday

■ Henry maintains the trial court erred by allowing Badger to "bolster her 'diagnosis'" of Victim by referring to records from Florida on Nayenday. The contention is meritless. Any testimony in reference to the Florida records is exiguous or oblique at best. A review of the trial record reveals the State voluntarily agreed to cease any query in regard to the Florida records. The court responded: "All right. Withdraw that and disregard it. Let's move on."

### *CONCLUSION*

■ We hold a psychotherapist with a specialty in child sexual abuse may be qualified to give an opinion in regard to PTSD. Under *Honea v. Prior,* 295 S.C. 526, 369 S.E.2d 846 (Ct.App.1988), *State v. Schumpert,* 312 S.C. 502, 435 S.E.2d 859 (1993), and *State v. Myers,* 301 S.C. 251, 391 S.E.2d 551 (1990), the relevant inquiry concerning qualification of the proffered expert is whether the witness possesses the necessary skill, learning, education, training, knowledge, or experience to enable the witness to give opinion testimony. The trial court did not abuse its discretion in qualifying Badger as an expert witness to give her opinion as to the diagnosis of PTSD. Any defect in the amount or quality of Badger's education, training, or experience goes to the weight to be accorded her testimony, not to its admissibility. Accordingly, Henry's conviction is hereby

**AFFIRMED.**

CONNOR and HUFF, JJ., concur.