560 S.E.2d 624

**Chris BROWN, as Personal Representative of his Deceased Son, Nathan Andrew Brown, Appellant,**

v.

**CAROLINA EMERGENCY PHYSICIANS, P.A., Respondent.**

**Chris Brown, Appellant,**

v.

**Carolina Emergency Physicians, P.A., Respondent.**

**Donna Williams Brown, Appellant,**

v.

**Carolina Emergency Medicine, P.A., J. Benjamin Crumpler, M.D., and Greenville Hospital System, Respondents.**

**No. 3420.**

Court of Appeals of South Carolina.

Heard Sept. 6, 2001.

Decided Dec. 17, 2001.

Rehearing Denied March 29, 2002.

---

570

H. Stanley Feldman, of N. Charleston; and Kelley M. Braithwaite, of Columbia, for appellants.

Sally M. Purnell, of Haynsworth, Marion, McKay & Guerard, and E. Brown Parkinson, Jr., both of Greenville, for respondents.

CURETON, Judge:

In these medical malpractice actions, Donna Brown, Chris Brown, individually, and Chris Brown, as Personal Representative of Nathan Andrew Brown (Appellants [1]), appeal the circuit court orders granting summary judgment to Greenville Hospital System, Dr. Benjamin Crumpler, and Carolina Emergency Medicine, P.A. Appellants allege that Dr. Crumpler's negligent failure to adequately treat and/or failure to hospitalize Donna Brown for psychiatric problems resulted in the beating death of sixteen-month-old Nathan Brown. We affirm in part, reverse in part, and remand.

## FACTUAL/PROCEDURAL BACKGROUND

In April of 1994, Chris Brown noticed a gradual change in the behavior of his wife, Donna. Donna's usual level of activity decreased and she became lethargic. The family had just moved into a new house. Rather than helping Chris, Donna sat around "not doing anything." Chris testified Donna seemed "depressed."

Chris, a member of the National Guard, was scheduled to depart for a two-week annual training session in New Mexico. Due to his concern for Donna, he requested permission of his commanding officer to stay home. The commanding officer required Chris to obtain a doctor's statement certifying that Donna needed Chris at home. When Donna arrived home on Friday, April 29, 1994, Chris took her to the emergency room at Greenville Memorial Hospital, an affiliate of Greenville Hospital System, to obtain the doctor's statement.

Dr. Crumpler examined Donna in the emergency room of Greenville Memorial Hospital and diagnosed her as suffering from acute delusional psychosis. Crumpler suggested Donna be hospitalized. Neither Chris nor Donna wanted to admit Donna to the hospital. Chris assured Crumpler he would care for Donna at home and bring her back if any problems developed before Monday. Before releasing Donna, Crumpler contacted an adult female family friend and asked her about Donna and the Brown home situation. Based on this conver-

---

1. Brown is a fictitious name used to protect the identity of the appellants.

sation, Crumpler believed the plans for Donna were satisfactory. Crumpler gave Chris a note stating he should be excused from Guard duty and advised Chris to take Donna to the Mental Health Center on Monday for follow-up evaluation and treatment. Crumpler prescribed Vistaril.

The next day, Saturday, Chris thought Donna seemed better. By Sunday morning, Donna appeared strangely energetic; she raced around the house singing a hymn. Chris found this disturbing and attempted to get Donna to slow down. He tried to physically restrain Donna's movement. To Chris's surprise, Donna suddenly fell asleep in the middle of struggling with him. Chris took Donna to the bedroom where she remained for approximately thirty minutes. Meanwhile, the Browns' sons, Adam, four, and Nathan, sixteen months, were in the front room of the house.

When Donna awoke, she seemed agitated. Donna resumed walking around the house, singing religious songs. When Donna asked Chris for the key to a shed on their property, Chris refused, fearing for Donna's safety. Donna became angry and repeatedly hit Chris with a rod from the closet. A violent struggle ensued during which Donna struck Chris with the rod, told Chris she hated him, and threatened to kill him.

As Donna and Chris struggled, Adam gave Chris a pipe bender, which Chris thought he could use to pin Donna's arms behind her. In the middle of the struggle, Donna suddenly went limp again and seemed to be asleep. Chris released her and went into the kitchen to call 911. While Chris was on the phone, Donna beat Nathan to death.

Prosecutors charged Donna with murder and two counts of assault and battery with intent to kill. At Donna's criminal nonjury trial, Dr. Larry Montgomery testified Donna is a paranoid schizophrenic who was unable to distinguish between moral and legal right and moral and legal wrong when she killed Nathan. Montgomery opined Donna was not criminally responsible for her actions under the M'Naughten test.[2] He

---

2. In South Carolina, the M'Naughten test is the standard for determining whether a defendant's mental condition at the time of the offense rendered him criminally responsible. *Davenport v. State*, 301 S.C. 39, 40, 389 S.E.2d 649, 649 (1990). The defendant is considered legally

agreed that Donna had not exhibited any violent behavior prior to her examination by Dr. Crumpler in the emergency room on April 29, 1994. The State stipulated Donna was not guilty by reason of insanity. At the conclusion of the trial, the court found Donna not guilty by reason of insanity.

After the criminal trial, Donna Brown, Chris Brown, as Personal Representative of Nathan Brown, and Chris Brown, individually, filed actions against Dr. Crumpler, Greenville Hospital System, and Carolina Emergency Medicine. They alleged Dr. Crumpler negligently failed to properly diagnose, treat, and hospitalize Donna, causing her to kill her son by beating him to death on May 1, 1994.[3]

The majority of these actions were subsequently dismissed. The trial court dismissed Chris Brown's actions (both individual and as Personal Representative of Nathan Brown) against Dr. Crumpler and the Greenville Hospital System finding they were filed after the expiration of the statute of limitations. The court denied the motion for summary judgment as to Carolina Emergency Medicine finding it was timely served under the statute of limitations.

The trial court denied Respondents' motion for summary judgment on Donna's claims finding genuine issues of material fact existed as to whether Donna's insanity tolled the statute of limitations during the period of her disability.

The trial court subsequently granted summary judgment on Chris Brown's action against Carolina Emergency Medical and on all of Donna's actions. As to Appellants' allegations of a failure to hospitalize Donna, the court concluded Appellants did not demonstrate a basis for involuntary commitment. In addressing Appellants' allegations of inadequate treatment, the court found Appellants did not show a violation of any standard of medical care which was most probably the proximate cause of any injury. It is from these rulings that Donna and Chris Brown appeal.

---

insane if, at the time of the offense, he lacked the capacity to distinguish moral or legal right from moral or legal wrong. *Id.*

**3.** Chris Brown also filed an action as Guardian for Adam Brown. The trial court dismissed this action finding Adam was not a beneficiary under the Wrongful Death Act and there is not a cause of action for loss of parental consortium.

## STANDARD OF REVIEW

"Summary judgment is appropriate when it is clear that there is no genuine issue of material fact and the conclusions and inferences to be drawn from the facts are undisputed." *Etheredge v. Richland Sch. Dist. One*, 341 S.C. 307, 311, 534 S.E.2d 275, 277 (2000). "In ruling on a motion for summary judgment, the evidence and the inferences which can be drawn therefrom should be viewed in the light most favorable to the nonmoving party." *Id.*

## LAW/ANALYSIS

### Issues on Appeal

I. Did the court err in granting summary judgment on the ground no evidence existed supporting an involuntary commitment?

II. Did the court err in excluding Dr. Nagelberg's affidavit?

III. Did the court err in granting summary judgment on the ground Appellants failed to meet the "most probably" proximate causation threshold?

IV. Should this court affirm the trial court based on Respondents' additional sustaining grounds?

### I. Involuntary Commitment

Appellants contend the trial court erred in granting summary judgment on the ground no evidence existed to support Donna's need for involuntary hospitalization. We disagree.

In his reply affidavit, Crumpler asserted the only way he could have admitted Donna, given her refusal to be hospitalized, would have been through an involuntary commitment proceeding. An involuntary commitment requires:

(1) [a] written affidavit under oath by a person stating:

(a) a belief that the person is mentally ill and because of this condition is likely to cause serious harm to himself or others if not immediately hospitalized;

(b) the specific type of serious harm thought probable if the person is not immediately hospitalized and the factual basis for this belief;

(2) a certification in triplicate by at least one licensed physician stating that the physician has examined the person and is of the opinion that the person is mentally ill and because of this condition is likely to cause harm to himself through neglect, inability to care for himself, or personal injury, or otherwise, or to others if not immediately hospitalized. The certification must contain the grounds for the opinion.

S.C.Code Ann. § 44–17–410 (Supp.2000).

 Appellants argued that Crumpler's *"diagnosis itself* [is] grounds for involuntary commitment." The clear language of the statute, however, requires more than a diagnosis of mental illness to justify the extreme measure of involuntary commitment. This accords with the general rule:

A mental illness or disorder is not, alone, sufficient to justify a commitment, or deprivation of liberty or privacy. Individuals may not be civilly committed involuntarily or deprived of their liberty or privacy unless they pose a danger to themselves or to others, or are gravely or greatly disabled, and neglect, refuse, or are unable to care for themselves or to provide for their basic needs or to protect their lives or health. A state may not confine individuals involuntarily if they are dangerous to no one and capable of surviving safely in freedom alone or with the help of willing and responsible family members or friends.

56 C.J.S. *Mental Health* § 49a (1992).

Viewing the record in the light most favorable to Appellants, there is no evidence that the statutory requirements for involuntary commitment were present in this case. Chris assured Crumpler he would take care of Donna if she was not hospitalized. Crumpler's emergency room notes state "[Donna] has not been violent in any way." The social worker's notes concur. Dr. Montgomery agreed that Donna had not exhibited any violent behavior prior to her examination by Dr. Crumpler on April 29, 1994. Crumpler concluded "[i]n [his] medical judgment, circumstances did not exist to proceed with an involuntary commitment against the wishes of the patient and her husband. There was no indication that she was a risk of danger to herself or others based on the circumstances presented."

Because Appellants failed to establish any statutory basis for involuntary commitment, the trial court properly found there was no genuine issue of material fact that Crumpler could not have involuntarily committed Donna. *See* Rule 56(e), SCRCP ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.").

## II. Dr. Nagelberg's Affidavit

 Appellants contend the court erred in excluding the affidavit of Dr. Daniel Nagelberg. We agree.

 "The qualification of an expert witness and the admissibility of the expert's testimony are matters within the trial court's discretion." *Gooding v. St. Francis Xavier Hosp.*, 326 S.C. 248, 252, 487 S.E.2d 596, 598 (1997). A witness is not required to work or have worked in the same field or area of practice to be competent to testify as an expert in that area. *Haselden v. Davis*, 341 S.C. 486, 501, 534 S.E.2d 295, 303 (Ct.App.2000). Competency to testify as an expert requires a witness to "have acquired by reason of study or experience or both such knowledge and skill in a profession or science that he is better qualified than the jury to form an opinion on the particular subject of his testimony." *Gooding*, 326 S.C. at 252–53, 487 S.E.2d at 598. Any defect in the education or experience of an expert affects the weight and not the admissibility of the expert's testimony. *Id.* at 253, 487 S.E.2d at 598.

*Gooding* involved a medical malpractice action against a hospital and an anesthesiologist. In that case, the supreme court determined that an emergency medical technician/paramedic was qualified to testify as an expert witness in the limited area of intubation, although he was not an anesthesiologist. *Id.* at 252–54, 487 S.E.2d at 597, 598; *see also Lee v. Suess*, 318 S.C. 283, 286, 457 S.E.2d 344, 346 (1995) (finding a doctor's limited exposure to a particular field merely goes to the weight of his testimony and not its admissibility).

Nagelberg is a licensed psychologist practicing in Savannah, Georgia. He received a doctoral degree in clinical psychology from Bowling Green State University in 1980 and has been licensed in Georgia since 1981. The court found Nagelberg's affidavit did not demonstrate he was competent "to testify with regard to the standard of care of an emergency room physician or what the requisite knowledge would or should be for an expert practicing in the field of emergency medicine." Thus, the court excluded Nagelberg's affidavit.

Nagelberg's testimony concerned the limited area of the diagnosis and treatment of mental illnesses.[4] In *Howle v. PYA/Monarch, Inc.*, 288 S.C. 586, 344 S.E.2d 157 (Ct.App. 1986), this court stated "a psychologist, once qualified as an expert witness by reason of education, training, and experience, is competent to testify as to diagnosis, prognosis, and causation of mental and emotional disturbance." *Id.* at 594, 344 S.E.2d at 161. "At most, a psychologist's lack of a medical license affects his credibility...." *Id.*

Based on the above, we find the court abused its discretion in declining to qualify Nagelberg as an expert in the diagnosis and treatment of mental illness and in excluding his affidavit from consideration in opposition to the motion for summary judgment. The trial court found that even with consideration of Nagelberg's affidavit, Respondents were entitled to summary judgment. We review the court's order granting summary judgment with consideration of Nagelberg's affidavit.

### III. Proximate Causation

■■■■■ Appellants argue the trial court erred in granting summary judgment on their action for inadequate treatment based on a failure to present expert testimony of proximate causation. We agree.

In a medical malpractice action, it is incumbent on the plaintiff to establish proximate cause as well as the negligence of the physician. Negligence is not actionable unless it is a proximate cause of the injury complained of, and

---

4. One sentence of Nagelberg's affidavit refers to the standard of care for an emergency physician. "In conclusion, the dreadful tragedy that took place at [the Brown] home within hours from her release should have been reasonably foreseen by an expert with the requisite knowledge to practice in the field of emergency medicine."

negligence may be deemed a proximate cause only when without such negligence the injury would not have occurred or could have been avoided. When one relies solely upon the opinion of medical experts to establish a causal connection between the alleged negligence and the injury, the experts must, with reasonable certainty, state that in their professional opinion, the injuries complained of most probably resulted from the defendant's negligence. The reason for this rule is the highly technical nature of malpractice litigation. Since many malpractice suits involve ailments and treatments outside the realm of ordinary lay knowledge, expert testimony is generally necessary. When it is the only evidence of proximate cause relied upon, it must provide a significant causal link between the alleged negligence and the plaintiff's injuries, rather than a tenuous and hypothetical connection.

*Ellis v. Oliver*, 323 S.C. 121, 125, 473 S.E.2d 793, 795 (1996) (citations omitted).

Appellants presented affidavits from Nagelberg and Dr. John Cusack. Cusack worked as an emergency physician prior to becoming a psychiatrist. Nagelberg averred in his affidavit that "[t]he proper treatment of choice for acute delusional psychosis is through hospitalization and medicine and not through counseling." Nagelberg further stated "[i]t is my firm professional opinion and belief that, given Ms. Brown's diagnosis of acute delusional psychosis, it would not be reasonable to first of all allow her to leave the hospital and second of all to treat such a dangerous condition with a mere referral for mental health counseling a few days later." Nagelberg continued: "[Donna's condition] warranted either a psychological evaluation to be performed by a licensed psychologist or a psychiatric consultation to be performed by a licensed psychiatrist." Nagelberg further stated "[i]n my opinion, the departure by Dr. Crumpler from the standard of care was the proximate cause of the tragedy in this case."

Cusack's affidavit opined "[t]he standard of care for an emergency room physician dictates that optimally the patient should have been immediately hospitalized. Dr. Crumpler neither hospitalized the patient, nor called a psychiatrist for consult. To compound these errors, Dr. Crumpler prescribed Vistaril, an antihistamine medication, which was inappropriate

considering his diagnosis that Ms. Brown was psychotic. Vistaril is a medication which would offer only minimal palliation without addressing the psychotic core of this patient's illness." The affidavit further stated Donna "should have been hospitalized or prescribed an antipsychotic medication while emergently treated and prescribed daily antipsychotic medication until her follow-up appointment...."[5] Cusack continued: "The gravity of Ms. Brown's psychiatric illness was beyond referral for simple counseling at Mental Health. The standard of care for an emergency physician would appear to me to have been breached in this case as set forth above. Further, if the patient had been hospitalized and prescribed proper medication, the probability of a fatal outcome would have been significantly diminished."[6]

Viewing this evidence and all inferences which can be reasonably drawn from it in the light most favorable to the non-moving parties, we find that Cusack and Nagelberg's affidavits are sufficient to meet the standard required to survive summary judgment. *See Baughman v. Am. Tel. & Tel. Co.*, 306 S.C. 101, 111, 410 S.E.2d 537, 543 (1991) (stating that the determination of whether expert medical testimony is sufficient to establish causation does not require that the expert actually use the words "most probably").

## IV. ADDITIONAL SUSTAINING GROUNDS

 Carolina Emergency Medicine argues this court should affirm the trial court's order on the ground that service of process on Carolina Emergency Medicine was ineffective.[7] We agree.

---

5. The affidavit originally stated Donna should have been "hospitalized *and* prescribed an antipsychotic medication." The "and" was crossed through, replaced with "or," and initialed by Dr. Cusack.

6. The "and" in this sentence, toward the end of Cusack's affidavit, was not altered.

7. A respondent may raise on appeal any additional reasons the appellate court should affirm the trial court's ruling. *See I'On, L.L.C. v. Town of Mt. Pleasant*, 338 S.C. 406, 420, 526 S.E.2d 716, 722–23 (2000) (appellate court may review respondent's additional reasons and rely on them or any other reason appearing in the record to affirm the lower

Questions of fact arising on a motion to quash service of process for lack of jurisdiction over the defendant are to be determined by the court. *Lawson v. Jeter*, 243 S.C. 103, 106, 132 S.E.2d 276, 277 (1963). The findings of the circuit court on such issues are binding on the appellate court unless wholly unsupported by the evidence or manifestly influenced or controlled by error of law. *Id.*

Carolina Emergency Medicine is a group of emergency room doctors, including Crumpler, that provide emergency physician services to Greenville Memorial Hospital. Carolina Emergency Medicine does not maintain an office and its only public physical presence is in the hospital emergency room. Appellants' process server, Selena Riddle, went to the hospital to serve Carolina Emergency Medicine. In her affidavit, Riddle stated she was directed to Katie Gillespie who allegedly indicated she was the manager of Carolina Emergency Medicine. Based on Gillespie's claim, Riddle served Gillespie as an agent for Carolina Emergency Medicine.

Dr. Jeffrey Leshman, the president of Carolina Emergency Medicine, and Gillespie, provided affidavits establishing that Gillespie was an employee of the hospital and was not authorized to accept service on behalf of Carolina Emergency Medicine.

Carolina Emergency Medicine argues Appellants' service of process on Gillespie, an emergency room secretary employed by the hospital, was ineffective.

Service may be made upon a corporation "by delivering a copy of the summons and complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant." Rule 4(d)(3), SCACR. *See Roche v. Young Bros. of Florence*, 318 S.C. 207, 210, 456 S.E.2d 897, 899 (1995) ("Service on a corporation may be made by hand delivering a copy of the summons and complaint to an officer of the corporation or to an authorized agent of the corporation."). In order to be

court's judgment; it is within appellate court's discretion whether to address any additional sustaining grounds).

effective, service must be made on an actual agent. *Hammond v. Honda Motor Co.,* 128 F.R.D. 638, 643 (D.S.C.1989).

In determining whether an alleged agent has authority to receive process for a defendant, this court concluded:

[t]he courts must look to the circumstances surrounding the relationship and find authority which is either express or implied from the type of relationship between the defendant and the alleged agent. Claims by one to possess authority to receive process or actual acceptance of process by an alleged agent will not necessarily bind the defendant. Rather, there must be evidence the defendant intended to confer such authority.

*Moore v. Simpson,* 322 S.C. 518, 523, 473 S.E.2d 64, 67 (Ct.App.1996) (construing service upon an agent under Rule 4(d)(1), SCRCP). "Without specific authorization to receive process, service is not effective when made upon an employee of the defendant, such as a secretary." *Id.* at 523–24, 473 S.E.2d at 67.

Even under our limited standard of review, we find Appellants failed to show sufficient compliance with Rule 4(d), SCRCP, to effect service on Carolina Emergency Medicine. *See Jensen v. Doe,* 292 S.C. 592, 594, 358 S.E.2d 148, 148–49 (Ct.App.1987) (plaintiff has the burden of showing the court has personal jurisdiction over defendant). Accordingly, we affirm the trial court's grant of summary judgment as to Carolina Emergency Medicine.[8]

## CONCLUSION

In conclusion, we reverse the circuit court's exclusion of Dr. Nagelberg's affidavit. We affirm the court's grant of summary judgment dismissing Chris and Donna's actions against Carolina Emergency Medicine for ineffective service of process. We affirm the court's grant of summary judgment on the remaining actions based on negligent failure to hospitalize Donna. We reverse and remand the court's grant of summary

---

8. We decline to address Greenville Hospital System's remaining additional sustaining ground. *See I'On,* 338 S.C. at 420 n. 9, 526 S.E.2d at 723 n. 9 (holding appellate court may decline to address respondent's additional sustaining grounds when it reverses trial court's decision).

judgment on the remaining actions as to the suits based on negligent failure to adequately treat Donna.

For the foregoing reasons, the judgment of the trial court is hereby

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

HEARN, C.J., and SHULER, J., concur.