THIS OPINION HAS NO PRECEDTIAL VALUE AND SHOULD NOT BE CITED OR RELIED ON AS 

PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Ronnie D. Robinson, Appellant,
 v.
 Anderson News Company, Employer, and The Hartford, Respondent.
 
 
 

Appeal From Jasper County
 Jackson V. Gregory, Circuit Court Judge
Unpublished Opinion No. 2007-UP-362
Submitted May 1, 2007  Filed August 28, 2007    

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

 
 
 
 Dennis Robert Toney, Jr., of Charleston, for Appellant.
 Stephen L. Brown, F. Drake Rogers, Russell G. Hines, all of Charleston, for Respondents.
 
 
 

PER CURIAM:  In this workers compensation case, Ronnie Robinson appeals the circuit courts order.  Robinson contends the circuit court erred in finding he had reached maximum medical improvement (MMI) as of July 16, 2001, in finding he did not sustain a psychological overlay injury as a result of his physical injuries, and in failing to order additional medical care and treatment.  Robinson also argues it was improper for the circuit court to address the issue of whether he had sustained his burden of proving a period of temporary total disability (TTD) from February 11, 2001 to July 16, 2001.  Finally, Robinson contends the circuit court erred in considering facts and issues not in the record.  We affirm in part, reverse in part, and remand. [1]  
 

FACTS 
On July 9, 2000, Robinson was injured while unloading plastic containers from a truck owned by Respondent Anderson News Company.   The containers were stacked in the back of a truck and fell onto Robinson striking him on the right side of his head, neck, and chest, knocking him to the ground.[2]  The next day, Robinson reported the incident to Respondent Anderson who sent him to Doctors Care where he was seen by Dr. Richard Rhodes.  Pursuant to a MRI performed in August 2000, Dr. Rhodes diagnosed Robinson with a herniated disc, returned him to work with the restriction that he not lift anything, and referred him to Dr. George Khoury, a neurologist. 
 
Dr. Khoury saw Robinson on September 7, 2000.  After reviewing the previous MRI, Dr. Khoury recommended Robinson try some conservative treatment starting with anti-inflammatory medications and injections.  Dr. Khoury referred Robinson to Trident Hospital where he received two cervical epidural steroid injections which, according to Robinson, did not help his pain.  
 
Robinson was next referred to Dr. Joseph Marzluff, a neurologist, who saw Robinson on November 8, 2000.   After reviewing the previous MRI, Dr. Marzluff opined that the MRI showed degenerative changes, but no significant disc herniation.  Dr. Marzluff suggested Robinson undergo physical therapy but stated, beyond that, he had nothing specific to offer at that time and discharged him to return to work with the restriction that he refrain from lifting anything weighing over ten pounds.  Robinson then tried physical therapy, but returned to Dr. Marzluff on November 29, 2000.  Dr. Marzluff noted Robinson continued to be symptomatic of neck pain and planned to do a myelogram and post-myelogram CT with the possibility of a discography following that with the thought that surgery might be beneficial if we can see some significant abnormalities.  
 
Robinson was next referred to Dr. Steven C. Poletti by Pat Botti, Robinsons workers compensation nurse case manager.  Based on his review of the MRI, Dr. Poletti diagnosed Robinson with [c]entral disc herniation, C3-4, with osteophyte/possible symptomatic disc degeneration at C5-6.    Dr. Poletti suggested the same treatment plan recommended by Dr. Marzluff.    Dr. Poletti gave Robinson an impairment rating in the range of 10% if treated inoperatively with permanent restrictions of no heavy overhead lifting greater than 35 to 40 pounds, and no constant driving. 
 
Dr. Poletti ordered a second MRI, which was taken on January 8, 2001.    Dr. Polettis review of the second MRI revealed C5-6 disc degeneration with posterior protrusion and modic end plate changes consistent with advanced degeneration.  Dr. Poletti suggested surgery and concluded if Robinson chose not to undergo surgery he would be at MMI and his impairment rating would be 10% but if Robinson chose to have the surgery, it would be premature to place him at MMI.  Robinson never had the surgery.  
 
Robinson was involved in a second work-related accident on February 11, 2001, when a car he was riding in was rear-ended by another vehicle.  Robinson was seen by Doctors Care on February 14, 2001, and was discharged with the restrictions that he not lift more than ten pounds; not lift anything over his head; perform ground level work only; not engage in repeated bending, stopping, squatting, pushing, jerking, twisting, or bouncing; and not engage in repetitive hand activities for extended periods of time.  Robinsons discharge instructions further indicated his treatment was to consist of taking pain killers twice a day and applying ice to the affected areas.  However, Robinson was not released to work because he had been terminated for poor job performance the previous day, February 13, 2001.  
Robinson continued to be seen by Doctors Care until he was again referred to Dr. Khoury on April 4, 2001; however, there is no indication that the visit ever occurred.  Following Robinsons termination, Respondents refused to provide any further treatment.  However, Robinson did return to Dr. Marzluff on May 9, 2001, complaining of neck and lower back pain.    Dr. Marzluff found Robinson had diffuse range of motion of the neck in all directions but noted [n]o specific motor or sensory deficit.  Dr. Marzluff later discharged Robinson, with no permanent impairment rating and at MMI as of July 16, 2001.  On the same day, May 9, 2001, Robinson saw chiropractor Dr. Bernie Miller.  Robinson saw Dr. Miller from May 9, 2001, until December 29, 2001, incurring bills in excess of $6,000.00.  
Robinson filed a Form 50 Employees Notice of Claim and Request for Hearing on September 5, 2002, alleging injuries to his head, right shoulder, right upper extremity, neck, back, and chest, arising out of the July 9, 2000 accident.  Robinson alleged he was in need of additional medical treatment for his injuries, and he was entitled to TTD payments from July 9, 2000 to present.  On October 4, 2002, Respondent Anderson and its carrier, the Hartford, (collectively Respondents) filed a Form 51 Employers Answer to Request for Hearing admitting Robinson suffered a compensable work-related injury, to his neck only, on July 9, 2000.  Respondents denied Robinson was in need of additional medical care and denied he was entitled to TTD benefits.
Robinson filed a second Form 50 on September 5, 2002, alleging injuries to his left lower extremity, neck, and back arising out of the February 11, 2001 accident.  Robinson alleged he was in need of additional medical treatment for his injuries and that he was entitled to TTD payments from February 22, 2001 to present.  Respondents filed their Form 51 on October 4, 2002, admitting Robinson suffered a compensable work-related incident on February 11, 2001.  Respondents alleged, however, that the injury was only a minor injury to the back and denied Robinson was entitled to any additional medical care or TTD benefits as a result of the injury.  
 
On December 5, 2002, Robinson once again returned to Dr. Poletti who obtained another MRI.  The MRI taken on January 9, 2003 showed a left sided disc protrusion at the C6-7 level with prominent left neuroforaminal narrowing.  Dr. Poletti noted [t]he C6-7 level does show marked disc abnormality that was increased from the previous visits.  Dr. Poletti opined Robinson was a candidate for surgery, but it was not something he had to do.  Specifically, Dr. Poletti recommended surgery only if Robinson were to reach the point where he cannot live with the problem as it is.  Robinson was to follow up with Dr. Poletti as needed.
The accidents were consolidated into one claim that was heard before a single commissioner on March 3, 2003.  On July 23, 2003, the single commissioner issued a Decision and Order finding that Robinson was not at MMI for either accident.  The single commissioner found that prior to the second accident, Dr. Poletti had mentioned surgery as an option, and Robinson would have had this recommended surgery but for Respondents refusal to authorize the procedure.  The single commissioner found that Robinson is in need of further medical treatment for the physical injuries as well as a resulting psychological overlay injury.  The single commissioner also found Robinson was entitled to TTD benefits for 22 days following the July 9, 2000 accident and from February 11, 2001 to the present and continuing from the second accident.  Finally, the single commissioner found Respondents were responsible for all of Robinsons past care and treatment, whether from authorized or unauthorized medical providers.  
Both parties appealed the Order of the single commissioner to the Appellate Panel of the Workers Compensation Commission (the commission).  Respondents appealed the findings of the single commissioner that Robinson had reached MMI in July of 2001; Robinson wanted the surgery in July of 2001 and Respondents refused to authorize the procedure; a compensable psychological overlay injury existed; Robinson was entitled to the full award of TTD benefits, maintaining that Robinson was only entitled to TTD for 22 days following the first accident; and Respondents were responsible for unauthorized treatment and evaluation before MMI and all treatment and evaluation before MMI.  Robinson appealed only the finding allowing Respondents an offset for any unemployment benefits received after February 11, 2001.  
 
By Order dated June 29, 2004, the commission affirmed in part and reversed in part the Order of the single commissioner.  The commission reversed the finding of fact that Robinson wanted surgery prior to the second accident and that Respondents refused to authorize the procedure.  The commission also deleted the finding that this surgery was needed at the time to lessen Robinsons disability.  The commission also deleted the finding of a compensable claim of psychological overlay injury.  The commissions order specifically found Robinson reached MMI as of July 16, 2001, based on the medical evidence.  The commission found Robinson was neither entitled to, nor in need of, additional medical treatment nor are Respondents responsible for any unauthorized medical expenses or medical expenses incurred after MMI unless specifically authorized.  The commission upheld the finding that Respondents were entitled to offset TTD benefits with any contemporaneous unemployment benefits.  Finally, the case was remanded for a determination of what, if any, permanent disability Robinson has suffered.
Robinson appealed the Order of the commission to the circuit court contending the commissions findings amounted to an error of law and were not based on substantial evidence in the record.  Robinson argued the Order of the single commissioner should be reinstated, except for the portion allowing the carrier to offset TTD with unemployment benefits.  The circuit court affirmed in part, reversed in part, and remanded the case to the single commissioner. 
 
Specifically, the circuit court found there was substantial evidence to support a finding that Robinson reached MMI as of July 16, 2001, with regard to any injuries sustained from the two accidents; the commission did not err in finding Respondents are not responsible for all unauthorized treatment before MMI and all treatment after MMI; there was substantial evidence to support a finding that Robinson has not suffered a compensable psychological overlay injury; and the commission erred in allowing Respondents to offset TTD benefits with unemployment benefits.
The circuit court went on to find Robinsons representations of employability may provide evidence of an ability to work during the periods of time which he received TTD benefits and, therefore, remanded the case to the Workers Compensation Commission for a finding of whether Robinson can sustain his burden of proving a period of TTD, from the period of February 11, 2001 to July 16, 2001, despite representing himself to the Employment Security Commission as able and willing to work during this period.  The circuit court also ordered the Workers Compensation Commission to make a determination of what amount of permanent disability or loss of use Robinson suffered, if any.  This appeal followed.  
 
STANDARD OF REVIEW
The South Carolina Administrative Procedures Act (APA) establishes the standard for judicial review of decisions of the Workers Compensation Commission.  Lark v. Bi-Lo, Inc., 276 S.C. 130, 134-35, 276 S.E.2d 304, 306 (1981).  A reviewing court may reverse or modify a decision of an agency if the findings, inferences, conclusions, or decisions of that agency are clearly erroneous in view of the reliable, probative and substantial evidence on the whole record.  Bursey v. S.C. Dept of Health & Envtl. Control, 360 S.C. 135, 141, 600 S.E.2d 80, 84 (Ct. App. 2004).  Under the scope of review established in the APA, this court may not substitute its judgment for that of the commission as to the weight of the evidence on questions of fact, but may reverse where the decision is affected by an error of law.   Liberty Mut. Ins. Co. v. S.C. Second Injury Fund, 363 S.C. 612, 619, 611 S.E.2d 297, 300 (Ct. App. 2005).
The findings of an administrative agency are presumed correct and will be set aside only if unsupported by substantial evidence.  Anderson v. Baptist Med. Ctr., 343 S.C. 487, 492, 541 S.E.2d 526, 528 (2001).    Accordingly, a reviewing court may not substitute its judgment for that of the commission as to the weight of the evidence on questions of fact.  Stephen v. Avins Constr. Co., 324 S.C. 334, 337, 478 S.E.2d 74, 76 (Ct. App. 1996).  Instead, review of issues of fact is limited to determining whether the findings are supported by substantial evidence in the record.  Hargrove v. Titan Textile Co., 360 S.C. 276, 289, 599 S.E.2d 604, 610-1 (Ct. App. 2004).  On appeal, this court must affirm an award of the Workers Compensation Commission in which the circuit court concurred if substantial evidence supports the findings.  Solomon v. W.B. Easton, Inc., 307 S.C. 518, 520, 415 S.E.2d 841, 843 (Ct. App. 1992).  Substantial evidence is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the administrative agency reached to justify its action.  Howell v. Pacific Columbia Mills, 291 S.C. 469, 471, 354 S.E.2d 384, 385 (1987).

LAW/ANALYSIS

I.  MMI and Additional Medical Care and Treatment 

Robinson contends the commission erred in finding he reached MMI as of July 16, 2001, and in failing to order additional medical care and treatment that would tend to lesson his period of disability.    We disagree.  
 
MMI is a term used to indicate that a person has reached such a plateau that in the physicians opinion there is no further medical care or treatment which will lessen the degree of impairment.  Bass v. Kenco Group, 366 S.C. 450, 467, 622 S.E.2d 577, 585 (Ct. App. 2005).   However, the fact that a claimant has reached MMI does not preclude a finding the claimant still may require additional medical care or treatment.  Dodge v. Bruccoli, Clark, Layman, Inc., 334 S.C. 574, 579-80, 514 S.E.2d 593, 596 (Ct. App. 1999).  MMI is a factual determination left to the discretion of the commission.  Gadson v. Mikasa Corp, 368 S.C. 214, 224, 628 S.E.2d 262, 268 (Ct. App. 2006).  Substantial evidence supports the circuit courts finding that Robinson reached MMI as to his physical injuries as of July 16, 2001, and is in need of no additional medical treatment.  
 
After the January 8, 2001 MRI, Dr. Poletti suggested Robinson have surgery and concluded that, if Robinson chose not to undergo surgery he would be at MMI and his impairment rating would be 10% and if Robinson chose to have the surgery, it would be premature to place him at MMI.  Robinson never had the surgery and there is no indication in the record that he wanted the surgery.  Dr. Poletti testified he never received communication from Robinson asking for the surgery.  While there are letters written by Robinsons attorney indicating that Robinson wanted the surgery, these letters were never submitted as evidence and were only shown to the circuit court on May 31, 2005, in correspondence regarding a proposed order.  Furthermore, none of the doctors notes indicate Robinson requested the surgery.  
 
On July 16, 2001, Dr. Marzluff indicated Robinson had been discharged from his care with no permanent impairment rating, and had reached MMI.  And while an injury at the C6-7 is still present, Dr. Poletti testified in his deposition that the C6-7 level injury was not mentioned previously and stated I can say that the disc herniation at C6-7 is most probably not related to the original accident.  Dr. Poletti also confirmed that the C6-7 herniation had not been apparent in any of the prior MRI scans that he reviewed and that he could not state within a reasonable degree of medical certainty that the surgery he had recommended to Robinson for the C6-7 level was at all related to the original accident.  Accordingly, substantial evidence exists to support the circuit courts finding that Robinson reached MMI as of July 16, 2001.  
 
II.  Psychological Overlay Injury
Robinson contends the circuit court erred in affirming the commission on the issue of his psychological overlay injury.  We agree. 
 
The single commissioner found that Robinson was in need of treatment for a psychological overlay injury.  In its order, the commission deleted the sentence dealing with the psychological overlay injury from the single commissioners order.  However, the commission failed to make specific findings of facts to support its decision on the issue of the psychological overlay injury.  The findings of fact of an administrative body must be sufficiently detailed to enable the reviewing court to determine whether the findings are supported by the evidence and whether the law has been properly applied to those findings.  Able Communications, Inc. v. South Carolina Public Service Comn, 290 S.C. 409, 411, 351 S.E.2d 151,152 (1986).  Where, as here, an order fails to specifically state the findings of fact relied on in reaching the determination it is impossible for an appellate court to review the order for error, since the reasons underlying the decision are left to speculation. Id. at 411, 351 S.E.2d at 152.  Accordingly, it was error for the circuit court to affirm the commission on the issue of Robinsons psychological overlay injury.
Mental injuries are compensable if they are induced either by physical injury or by unusual or extraordinary conditions of employment.  Getsinger v. Owens-Corning Fiberglas Corp., 335 S.C. 77, 81, 515 S.E.2d 104, 106 (Ct. App. 1999) (citing generally Kennedy v. Williamsburg County, 242 S.C. 477, 131 S.E.2d 512 (1963) and Stokes v. First Natl Bank, 306 S.C. 46, 50, 410 S.E.2d 248, 250 (1991)).  Though, all parties agree that Robinson suffers from psychological problems, Respondents argue these problems stem from a third accident that injured the C6-7 level identified for the first time by Dr. Poletti after the January 9, 2003 MRI.  
 
From our reading of the record, it appears that no evidence was presented to show that Robinsons psychological problems stem from anything other than his work-related accidents.  Robinson saw psychologist Dr. Lewis Waid beginning January 13, 2003.  Dr. Waid diagnosed Robinson with depression stemming from the two work-related injuries and subsequent loss of employment.  Dr. Waid stated that Robinsons pain is directly related to his medical problems.  Specifically, Dr. Waid stated: It is my opinion to absolutely a degree of certainty that these  his state of psychological difficulties at this time and pain stem from those two accidents and to a certain extent certainly some stressors that have followed in the context of those accidents.  While it is true Robinsons first noted complaint was not until October 28, 2002, at the office of Dr. Miller, this was still before any mention of a C6-7 level problem.  The only evidence presented indicates Robinsons psychological injuries stem from his work-related accidents, and there was absolutely no evidence that Robinsons psychological problems stem from the alleged third accident.  Furthermore, Dr. Waid testified that Robinson is not at MMI concerning his psychological overlay injury.  
 
While our reading of the record would result in a different outcome on the issue of the psychological overlay injury than the one reached by the commission, the duty to determine facts is placed solely on the Commission and the court reviewing the decision of the Commission has no authority to determine factual issues but must remand the matter to the Commission for further proceedings.  Fox v. Newberry County Memorial Hosp., 319 S.C. 278, 280, 461 S.E.2d 392, 394 (1995) (citing Drake v. Raybestos-Manhattan, Inc., 241 S.C. 116, 127 S.E.2d 288 (1962)).  Accordingly, we reverse the circuit court and remand this issue to the commission to make specific findings of fact to support its determination that Robinson did not suffer a compensable psychological overlay injury.  If the commission is unable to do so, they should reinstate the single commissioners finding as to the psychological overlay injury and, given Dr. Waid testimony that Robinson has not reached MMI concerning his psychological overlay injury, determine the additional medical treatment needed for his psychological injury.  
 
III.  Temporary Total Disability
Robinson argues Respondents failed to preserve for appeal the issue of whether Robinson sustained his burden of proving a period of TTD from February 11, 2001 to July 16, 2001, despite representing himself to the Employment Security Commission as able and willing to work during that period.  We disagree.
Robinson argues that it was improper for the circuit court to make such a ruling.  However, Robinson failed to move to alter or amend the judgment pursuant to Rule 59(e), SCRCP.  At no time prior to this appeal did Robinson argue that it was improper for the circuit court to rule on the issue of TTD. Therefore, this argument is not preserved for our review.  Shealy v. Aiken County, 341 S.C. 448, 460, 535 S.E.2d 438, 444-45 (2000).  
 
IV.  Use of Improper Facts  

Robinson contends Respondents improperly presented issues and facts outside of the record both through their briefs and in oral arguments.  We disagree.  
 
After a hearing, the single commissioner left the record open for thirty days to permit Respondents to take the deposition of Dr. Poletti.  Specifically, the single commissioner stated: Im going to leave it open for thirty days with this stipulation, that no testimony from this hearing may be used to craft questions for Dr. Poletti, either direct questions asked at this hearing or indirectly in the way of hypotheticals posed to Dr. Poletti.  Robinson now claims improper testimony was elicited from Dr Poletti using information gleaned from the initial hearing.  However, this issue is not preserved.  
 
Initially, while it is true that Robinson objected to some instances of alleged improper questioning, Robinson never raised the issue of the single commissioners, commissions, or circuit courts use of these improper facts until after the hearing before the circuit court.  And though the circuit court never ruled on the issue, Robinson failed to raise the issue in a Rule 59(e) motion, as required.  Shealy, 341 S.C. at 460, 535 S.E.2d at 444-45.  Furthermore, most of the instances complained of were never objected to during the testimony.  See Webb v. CSX Transp., Inc., 364 S.C. 639, 655, 615 S.E.2d 440, 449 (2005) (stating that failure to contemporaneously object precluded CSX from raising issue on appeal).  
 
CONCLUSION
Because the circuit court erred in affirming the commission on the issue of Robinsons psychological overlay injury, we reverse the circuit court and remand this issue to the commission to make specific findings of fact to support its determination that Robinson did not suffer a compensable psychological overlay injury or to reinstate the single commissioners finding as to Robinsons psychological overlay injury.  All other issues are affirmed.  For the reasons stated herein, the circuit courts decision is 
 
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED. 

STILWELL, SHORT, and WILLIAMS, JJ., concur. 

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.
[2] Robinson missed a total of twenty-two days of work stemming from this accident.